IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| CHRISTOPHER A. HARROW, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| FAMILY VENTURES 1, LLC d/b/a Domino's Pizza, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Christopher A. Harrow and brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* Plaintiff alleges that Defendant Family Ventures 1, LLC d/b/a Domino's Pizza discriminated against him due to his disability, including through said Defendant's failure to engage in the interactive process and to provide a reasonable accommodation for his disability, and failed to provide Plaintiff with paid leave that he was otherwise entitled pursuant to the Families First Coronavirus Response Act, and specifically, the Emergency Family and Medical Leave Expansion Act,  respectfully showing the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331, 1343, & 1391 and the enforcement provisions of the Americans with Disabilities Act, the Rehabilitation Act, and the Family and Medical Leave Act.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was employed, and the events underlying this action, occurred in Richmond County, Georgia, which is located in this judicial district.

**PARTIES**

3.

Plaintiff Christopher A. Harrow (hereinafter, "Plaintiff" or "Harrow") is a citizen of the United States and a resident of the State of Georgia. At all times relevant to this suit, Mr. Harrow was employed with Defendant Family Ventures 1, LLC d/b/a Domino's Pizza.

4.

At all relevant times, Mr. Harrow was considered a covered, non-exempt employee under the Americans with Disabilities Act, the Rehabilitation Act, and the Emergency Family and Medical Leave Expansion Act.

5.

Defendant Family Ventures 1, LLC d/b/a Domino's Pizza (hereinafter, "Defendant") is a foreign profit corporation incorporated under the laws of the State of South Carolina with its principal office located at 1610 Sam Rittenberg Boulevard, Charleston, South Carolina 29407. Defendant may be served with process by delivering a copy of the Summons and Complaint to its registered agent, CT Corporation System, located at 1201 Peachtree Street, NE, Atlanta, Fulton County, Georgia 30361.

6.

Defendant is engaged in interstate commerce, has an annual revenue in excess of $500,000.00, and has employed in excess of 101 employees, working for at least 20 calendar weeks

in 2021 and in prior calendar years.

7.

Defendant is a covered employer within the meaning of the Americans with Disabilities Act.

8.

Defendant is also a covered employer under the Rehabilitation Act because Defendant receives federal grants of assistance and otherwise has contracts with the federal government, including, but not limited to Defendant's receipt of approximately $1,580,000.00 in funding from the Small Business Administration through its Paycheck Protection Program in or about April 2020.

9.

Defendant employs fewer than 500 employees, and as a result, Defendant is considered a covered employer under the Emergency Family and Medical Leave Expansion Act.

## STATEMENT OF FACTS

10.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 8, as if the same were set forth herein.

11.

Mr. Harrow was employed with Defendant beginning in November 2017 as a delivery driver at Defendant's store located at Fort Gordon, Georgia.

12.

Mr. Harrow was not only qualified for the job of delivery driver, but his performance in this role had been satisfactory, if not exceptional, for the duration of his tenure.

13.

At all relevant times, Mr. Harrow was able to perform the essential functions of his position with or without a reasonable accommodation.

14.

Mr. Harrow has several serious medical conditions, including asthma, a deviated septum and overactive sinus membrane, and hypertension.

15.

Asthma is as long-term inflammatory disease of the airways of the lungs, which results in variable and recurring symptoms, reversible airflow obstruction, and easily triggered bronchospasms.

16.

A deviated septum is a condition in which the bone and cartilage that divide the nasal cavity of the nose in half are off center.

17.

Both Asthma and a deviated septum result in significant problems with the respiratory system and with major life activities such as breathing, sleeping, and working.

18.

Hypertension, also known as high blood pressure, is a long-term medical condition in which the blood pressure in the arteries is persistently elevated. Hypertension is also a risk factor for many other major medical conditions.

19.

As a result of the aforementioned medical conditions, Mr. Harrow routinely finds it challenging to breathe, especially on days when the humidity is unusually high, a condition that is common in the Augusta, Georgia area.

20.

All of these conditions – asthma, a deviated septum, and hypertension – may result in difficulty if a person overexerts themselves or engages in physical activities.

21.

As a result, like others who suffer from the aforementioned conditions, Mr. Harrow has conditions that qualify as disabilities under the Americans with Disabilities Act and the Rehabilitation Act.

22.

Defendant was aware of Mr. Harrow's medical condition, as well as the difficulty that Mr. Harrow would have breathing at times.

23.

Around February 2020, Defendant's business grew substantially, which caused a sharp increase in Mr. Harrow's hours and stress at work.

24.

These working conditions caused Mr. Harrow's blood pressure to become elevated to the point that he was forced to seek emergency medical treatment, and Mr. Harrow was told by his doctors that his blood pressure had nearly reached levels associated with a stroke. The physician treating Mr. Harrow also found that he had been close to experiencing a heart attack and

recommended that Mr. Harrow take a period of leave for two weeks so his symptoms could improve, and Mr. Harrow complied.

25.

Even if Mr. Harrow's supervisors had not been aware of his health conditions prior to February 2020, they certainly became aware at that point because they approved Mr. Harrow's leave.

26.

On March 17, 2020, Mr. Harrow's physicians cleared him to return to work the next day, with no restrictions, and Mr. Harrow reported to work that day.

27.

As the global pandemic caused by COVID-19 began to get more serious, businesses began to shut down and the state and federal governments issued stay-at-home and shelter-in-place orders.

28.

This only caused Mr. Harrow's work as a pizza delivery driver to increase when he returned to work on and after March 18, 2020.

29.

Specifically, such an unusual growth of the business was caused by a substantial increase in the number of people ordering pizza for delivery because of said stat-at-home and shelter-in-place orders.

30.

Previously, Mr. Harrow had been working on average between around 20 to 30 hours per work.  However, in March 2020, Mr. Harrow found that he was working between at least 50 to 60 hours per work.

31.

By the end of end of March 2020, Mr. Harrow was contacted by a local media outlet and Mr. Harrow ultimately agreed to an anonymous interview with a local media outlet for a story in which Mr. Harrow discussed some of Defendant's failures to take precautions to protect its employees from the virus.  Unfortunately, the media outlet failed to protect Mr. Harrow's identity and his face and name appeared on the evening news.  Mr. Harrow's supervisors were not happy that Mr. Harrow had participated in the interview, but this incident did not result in any adverse consequences to Mr. Harrow's employment and do not appear connected to any of the subsequent events.

32.

In or around July 2020, Defendant began requiring all of its employees to wear facial coverings or "masks" to prevent the spread of COVID-19.  Initially, Defendant provided surgical-style masks to its employees, but later provided manufactured, cloth masks that displayed the Domino's brand.

33.

Mr. Harrow complied with the directives, wearing the surgical mask, and then making his own custom mask when Defendant distributed the branded ones to employees since the one provided to Mr. Harrow did not fit on his face.

34.

However, Mr. Harrow quickly found that he was having difficulty with the facial coverings, including both the surgical masks and those provided by Defendant as well as Mr. Harrow's homemade mask, and that he was often running out of breath as a result.

35.

Mr. Harrow begin having to use his inhaled medication, or a corticosteroid inhaler, more and more frequently to avoid an asthma attack and to be able to breathe adequately.

36.

However, this increase in the intake of this medication only caused Mr. Harrow's blood pressure to rise significantly, which is a common side effect associated with corticosteroid inhalers.

37.

Mr. Harrow talked to one of his supervisors, Area Manager Rob Ward (hereinafter, "Area Manager Ward"), and Mr. Harrow explained the problems that he was experiencing due to his existing medical conditions when he was required to wear a surgical or homemade facial covering, including his inability to breathe and how his asthma medications were causing significant increases in Mr. Harrow's blood pressure.

38.

Area Manager Ward suggested that Mr. Harrow could use a face shield instead of mask, and Mr. Harrow agreed that this would be an acceptable alternative.

39.

Wearing a facial shield, instead of a surgical, cloth, or homemade facial covering, would have allowed Mr. Harrow to continue performing the essential functions of Mr. Harrow's position.

40.

Allowing Mr. Harrow to wear a facial shield, instead of a surgical, cloth, or homemade facial covering, would have been effective in substantially reducing Mr. Harrow's risk of infecting others with COVID-19, as well as offering some level of protection to Mr. Harrow himself.

41.

Allowing Mr. Harrow to wear a facial shield, instead of a surgical, cloth, or homemade facial covering, would not have posed an undue burden or hardship on Defendant.

42.

Moreover, Mr. Harrow expressed his willingness to obtain a facial shield himself, and as a result, it is possible that Defendant would not have incurred any costs by allowing Mr. Harrow to wear a facial shield, instead of a surgical, cloth, or homemade facial covering.

43.

However, upon review of Defendant's policies, Area Manager Ward found that a face shield would not be an option at that time, and he explained that to Mr. Harrow.

44.

Area Manager Ward said that he would follow up with Mr. Harrow once Defendant's policy had been amended to allow for a face shield.

45.

Critically, as of the date that Mr. Harrow filed his Charge of Discrimination on or about January 22, 2021, and continuing to the present, neither Area Manager Ward nor anyone else associated with Defendant have not followed up with Mr. Harrow.

46.

Despite Defendant being on notice of Mr. Harrow's need for a reasonable accommodation and its rejection of Mr. Harrow's requested accommodation, Defendant failed a refused to explore the availability of any other reasonable accommodations that it may be able to provide.

47.

After denying Mr. Harrow's requested reasonable accommodation, Defendant failed to provide Mr. Harrow with any other accommodation for his disabilities.

48.

Notwithstanding its mask mandate, Defendant was otherwise failing to institute appropriate precautions to prevent the spread of COVID-19 around the same time.  For example, one of Defendant's managers became infected with COVID-19 at some point in Summer 2020. While Defendant was aware that this manager was ill, Defendant allowed the supervisor to continue to work, and Mr. Harrow and other employees were not notified of the manager's COVID-19 infection until around two weeks later.

49.

Defendant made it sufficiently clear to Mr. Harrow that he would only be allowed to work if he wore a mask or face covering, but that a face shield (or some other device that would not obstruct Mr. Harrow's breathing) would not be an option.

50.

As a result, Mr. Harrow was faced with the choice of not being able to breathe, risking an increase in blood pressure, and possibly having a heart attack or stroke with not working for Defendant since the face masks were not a practical option in light of Mr. Harrow's medical condition.

51.

Similarly, Mr. Harrow had become extremely concerned about Defendant's failures to take appropriate measures to avoid the spread of COVID-19 in the workplace, including Defendant allowing the aforementioned manager to continue work despite being aware that he had an active COVID-19 infection.

52.

Store Manager Jimmy Ward (hereinafter, "Store Manager Ward") had previously recommended that Mr. Harrow take a medical leave of absence solely because he had conditions that were considered high risk if he were exposed to COVID-19.

53.

After Defendant denied Mr. Harrow's requested reasonable accommodation, Mr. Harrow felt that such a leave of absence was his only option in light of Defendant's face mask policy, and its refusal to allow Mr. Harrow to use a face shield instead of wearing a mask.

54.

Mr. Harrow began a medical leave of absence on July 27, 2020.

55.

To be clear, Mr. Harrow was ready, willing, and able to work and perform the essential functions of his job on July 27, 2020.

56.

In or around August 2020, Mr. Harrow submitted a claim with the Georgia Department of Labor for partial unemployment insurance.  The purpose of these partial unemployment claims was for situations in which employees' hours were reduced due to lack of work.

57.

Regardless of Mr. Harrow's ultimate eligibility for such benefits, Defendant's response that it submitted to the Georgia Department of Labor was that it had not had any reduction in hours that Mr. Harrow did not have any legitimate reason to go out on leave.

58.

The information communicated by Defendant to the Georgia Department of Labor concerning the reasons for Mr. Harrow's medical leave was false.

59.

While it is unclear whether Mr. Harrow's partial unemployment insurance claim was rejected, he has not received any benefits to date, despite following up with the Georgia Department of Labor on numerous occasions.

60.

In August 2020, after Mr. Harrow had sought partial unemployment benefits, he found that Defendant had removed his account from Defendant's online payroll vendor.

61.

Even though Mr. Harrow learned that he no longer had an account with the payroll vendor, it was Mr. Harrow's belief that he remained employed with Defendant in August 2020.

62.

However, in November 2020, Mr. Harrow found that Defendant had terminated Mr. Harrow's employment around that time.

63.

When Mr. Harrow learned about his termination, he contacted human resources ("HR"), which confirmed that Mr. Harrow had indeed been terminated.

64.

When Mr. Harrow spoke to HR, he was also told that he would have to reapply for his position.

65.

The medical leaves of absence that Mr. Harrow took into March 2020 and from July 2020 until his termination in November 2020 were entirely unpaid.

66.

Mr. Harrow was a long-time employee of Defendant, and he was qualified for his position. He would have been able to perform the essential functions of his position, provided that Defendant had modified its mask mandate to allow him to wear a face shield instead of a mask.  A proper face shield would have provided adequate protection to Mr. Harrow and the coworkers and customers with whom he interacted, would not have been an unreasonable expense for the employer and could have been provided by Mr. Harrow himself, if necessary, and would not have otherwise been an undue burden on Defendant.

67.

Yet, Defendant refused to provide this or any other reasonable accommodation, instead forcing Mr. Harrow on an unnecessary, unpaid medical leave of absence, and subsequently terminating his employment.

Procedural/Administrative Background

68.

On January 22, 2021, Mr. Harrow submitted his Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that he had been subjected to discrimination based on his disability, including the failure to provide a reasonable

accommodation, in violation of the Americans with Disabilities Act. The EEOC assigned Mr. Harrow Charge Number 410-2021-02645.

69.

On May 25, 2022, the EEOC issued its Notice of Right to Sue, which Mr. Harrow received through counsel on the same day.

70.

Mr. Harrow has exhausted his administrative remedies as to her Charge of Discrimination, and he is filing the instant action within ninety days of the EEOC's issuance and his receipt of the Notice of Right to Sue.

**COUNT I:**
**DISCRIMINATION BASED ON DISABILITY**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

71.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 70, as if the same were set forth herein.

72.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

73.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

74.

As alleged herein, Plaintiff was employed with Defendant for nearly three years and served in the role of delivery driver. Plaintiff was performing his duties in that role, and he was otherwise qualified and able to perform the essential function of his job, with or without a reasonable accommodation.

75.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

76.

As alleged herein, Plaintiff suffered from asthma, a deviated septum and an overactive sinus membrane, and hypertension.

77.

As alleged, and as incorporated by reference herein, Plaintiff's impairments substantially limit a number of Plaintiff's major life activities.

78.

Defendant was aware of Plaintiff's disabilities.

79.

As alleged herein, Defendant forced Plaintiff to take leave in July 2020, solely on account of Plaintiff's disabilities.

80.

As alleged herein, from July 2020 through November 2020, Defendant refused to allow Plaintiff to return to work, solely on account of Plaintiff's disabilities.

81.

Plaintiff will show that Defendant's stated reason for forcing Plaintiff on leave in July 2020, and its refusal to allow Plaintiff to return to work from July 2020 through November 2020, is pretextual, and that Defendant's actions were actually motivated by discriminatory animus as a result of Plaintiff's disability.

82.

Plaintiff has been injured by Defendant's discrimination based on disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including back pay, front pay and/or injunctive relief, compensatory and punitive damages in the maximum amount permitted by statute of not less than $300,000.00, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT II:**
**FAILURE TO PROVIDE REASONABLE ACCOMMODATION**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

83.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 70, as if the same were set forth herein.

84.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

85.

Discrimination based on disability includes an employer's failure to make a "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

86.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. *See* 42 U.S.C. § 12111.

87.

As alleged herein, Plaintiff was employed with Defendant for nearly three years and served in the role of delivery driver. Plaintiff was performing his duties in that role, and he was otherwise qualified and able to perform the essential function of his job, with or without a reasonable accommodation.

88.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

89.

As alleged herein, Plaintiff suffered from asthma, a deviated septum and overactive sinus membrane, and hypertension.

90.

As alleged, and as incorporated by reference herein, Plaintiff's impairments substantially limit a number of Plaintiff's major life activities.

91.

Defendant was aware of Plaintiff's disabilities.

92.

Defendant was also aware of Plaintiff's need for a reasonable accommodation in order to perform the essential functions of his job.

93.

As alleged herein, in July 2020, Plaintiff requested a reasonable accommodation from Defendant, particularly that Defendant permit Plaintiff to wear a facial shield instead of a surgical mask and/or manufactured or homemade cloth facial covering.

94.

However, beginning in July 2020 through November 2020, Defendant expressly denied Plaintiff's requested accommodation and other refused to grant Plaintiff any reasonable accommodation for his disabilities.

95.

The accommodation requested by Plaintiff was available.

96.

The accommodation requested by Plaintiff would have been effective, and would have otherwise allowed Plaintiff to perform the essential functions of his job.

97.

The accommodation requested by Plaintiff would not have posed an undue hardship on Defendant.

98.

Plaintiff was willing to provide his own facial covering, at no cost to Defendant, and as a result, the accommodation requested by Plaintiff would not have posed any hardship on Defendant whatsoever.

99.

After denying Plaintiff's requested reasonable accommodation, Defendant failed and refused to consider any other alternatives, and Defendant otherwise refused to engage in the interactive process to explore other accommodations that may have been available.

100.

Instead of granting Plaintiff the reasonable accommodation that he requested, Defendant forced Plaintiff to take a medical leave of absence in July 2020 that Plaintiff neither wanted nor needed.

101.

Defendant's refusal to provide Plaintiff with a reasonable accommodation continued from July 2020 until Plaintiff was ultimately terminated in or around November 2020.

102.

Plaintiff has been injured by Defendant's discrimination based on disability, due to its failure to engage in the interactive process and to provide a reasonable accommodation, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including back pay, front pay and/or injunctive relief, compensatory and punitive damages in the maximum amount permitted by statute of not less than $300,000.00, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT III:**
**DISCRIMINATION BASED ON DISABILITY**
**IN VIOLATION OF THE REHABILITATION ACT**

103.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 70, as if the same were set forth herein.

104.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a).

105.

Defendant, as a program receiving Federal financial assistance, including Defendant's receipt of approximately $1,580,000.00 from the Small Business Administration and its Paycheck Protection Program in or around April 2020, is a covered employer under the Rehabilitation Act.

106.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

107.

For the same reasons set forth in Count I, *supra*, Defendant discriminated against Plaintiff based on disability.

108.

Plaintiff has been injured by Defendant's discrimination due to disability, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

## COUNT IV:
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION
## IN VIOLATION OF THE REHABILITATION ACT

### 109.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 70, as if the same were set forth herein.

### 110.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance …" 29 U.S.C. § 794(a).

### 111.

Defendant, as a program receiving Federal financial assistance, including Defendant's receipt of approximately $1,580,000.00 from the Small Business Administration and its Paycheck Protection Program in or around April 2020, is a covered employer under the Rehabilitation Act.

### 112.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

### 113.

For the same reasons set forth in Count II, *supra*, Defendant failed to provide Plaintiff with a reasonable accommodation for his disabilities and Defendant failed and refused to otherwise engage in the interactive process.

### 114.

Plaintiff has been injured by Defendant's discrimination due to disability, through Defendant's failure and refusal to provide a reasonable accommodation and otherwise engage in

the interactive process, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

## COUNT V:
## VIOLATION OF THE
## EMERGENCY FAMILY AND MEDICAL LEAVE EXPANSION ACT

### 115.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 70, as if the same were set forth herein.

### 116.

At all relevant times to this Complaint, Defendant was a private employer with fewer than 500 employees, and as a result, Defendant is considered a covered, non-exempt employer pursuant to the Emergency Family and Medical Leave Expansion Act.

### 117.

As alleged herein, Plaintiff was employed by a covered employer and had been employed for at least 30 days, and as a result, Plaintiff was eligible for all benefits under the Emergency Family and Medical Leave Expansion Act.

### 118.

As a result of Plaintiff's medical conditions, as alleged herein, he was considered an individual with an increased risk of complications from COVID-19, particularly at times that Plaintiff was without the use of adequate personal protective equipment.  Pursuant to Executive Orders issued by the Governor of the State of Georgia, Plaintiff was subject to a quarantine, isolation, and/or stay-at-home order related to COVID-19.

119.

As alleged herein, Plaintiff was unable to wear a surgical mask or manufactured or homemade cloth facial covering as a result of Plaintiff's medical condition and disabilities. Moreover, Defendant refused to allow Plaintiff to wear a facial shield instead of one of the aforementioned masks.

120.

As a result of Plaintiff's medical conditions and disabilities, and because he lacked appropriate personal protective equipment, Plaintiff was an individual subject to the State of Georgia's stay-at-home order and was therefore unable to work during the period of July 2020 through November 2020.

121.

As a result of Plaintiff's inability to work, Defendant placed Plaintiff on a period of medical leave from the period of July 2020 through November 2020.

122.

Defendant failed to provide Plaintiff with any paid leave during the period of his medical leave from July 2020 through November 2020.

123.

In or before November 2020, when Plaintiff should have otherwise exhausted his paid leave under the Emergency Family and Medical Leave Expansion Act, Defendant refused to restore Plaintiff into his position and instead terminated his employment.

124.

Plaintiff has been injured by Defendant's failure to provide paid leave and to restore Plaintiff in his position at the expiration of such paid leave, and Plaintiff is entitled to all damages available under the Emergency Family and Medical Leave Expansion Act in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher A. Harrow respectfully prays for the following relief:

1)      That Summons and Process be issued to Defendant Family Ventures 1, LLC d/b/a Domino's Pizza, and that Defendant be served as provided by law;

2)      That this matter be tried before a jury;

3)      That judgment be awarded for and in favor of Plaintiff on Count I for discrimination based on disability and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

4)      That judgment be awarded for and in favor of Plaintiff on Count II for discrimination based on disability, specifically due to said Defendant's refusal to engage in the interactive process and failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

5)      That judgment be awarded for and in favor of Plaintiff on Count III for discrimination based on disability and grant Plaintiff all relief allowable under the Rehabilitation Act;

6)      That judgment be awarded for and in favor of Plaintiff on Count IV for discrimination based on disability, specifically due to said Defendant's refusal to engage in the interactive process and failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Rehabilitation Act;

7)      That judgment be awarded for and in favor of Plaintiff on Count V as a result of Defendant's failure to compensate Plaintiff for his medical leave and for failing to restore Plaintiff into his position at the conclusion and/or expiration of his leave, and grant Plaintiff all relief allowable under the Emergency Family and Medical Leave Expansion Act; and,

8)      For such other relief as this Court shall seem just and proper.

Respectfully submitted, this 22nd day of August, 2022.

KENNETH E. BARTON III
Georgia Bar No. 301171
*Attorney for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com